## UNITED STATES *v.* LAWRENCE & Co. (No. 2051).[1]

1. CONSTRUCTION, SECTION 501, REVENUE ACT OF SEPTEMBER 8, 1916—"SYNTHETIC."
    Synthesis is the exact opposite of analysis; and, as analysis is the separation of a compound into its constituent parts, so synthesis is the making of the compound by uniting or combining its constituent parts. A synthetic compound which contains alizarin is not "synthetic alizarin" and not embraced by that language in section 501, revenue act of September 8, 1916.

2. "TUSCAN RED."
    "Tuscan red," a pigment for making paint, is not brought within the exception of section 501, revenue act of September 8, 1916, by reason of the fact that it contains alizarin, and the decision of the collector subjecting it to the additional duty provided for by the section should have been sustained by the Board of General Appraisers.

United States Court of Customs Appeals, November 23, 1920.

APPEAL from Board of United States General Appraisers, Abstract 43708.
[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.
*George H. Rankin* for appellees.

[Oral argument Oct. 28, 1920, by Mr. Hanson and Mr. Rankin.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

"Tuscan red" imported at the port of Pittsburgh, Pa., was classified by the collector of customs as one of the commodities enumerated in Group III, section 500, Title V, of the revenue act of September 8, 1916. The importation was accordingly assessed with a duty of 30 per cent ad valorem as provided by said section 500, and also with the additional duty of 5 cents per pound as provided by section 501 of said act. The parts of sections 500 and 501 material to the case are as follows:

SEC. 500, GROUP III. All colors, dyes, or stains, whether soluble or not in water, color acids, color bases, color lakes, photographic chemicals, medicinals, flavors, synthetic phenolic resin, or explosives, not otherwise specially provided for in this title, when obtained, derived, or manufactured in whole or in part from any of the products provided for in Groups I and II, natural alizarin and indigo, and colors, dyes, or color lakes obtained, derived, or manufactured therefrom, thirty per centum ad valorem.

SEC. 501. That on and after the day following the passage of this act, in addition to the duties provided in section 500, there shall be levied, collected, and paid upon all articles contained in Group II a special duty of 2½ cents per pound, and upon all articles contained in Group III (except natural and synthetic alizarin, and dyes obtained from alizarin, anthracene, and carbazol; natural and synthetic indigo and all indigoids, whether or not obtained from indigo; and medicinals and flavors), a special duty of 5 cents per pound.

[1] T. D. 38548 (38 Treas. Dec., 743).
162987—21—VOL 10——12

The importers protested that the merchandise was a material of which alizarin was the coloring matter, and that it was not subject to the additional duty of 5 cents per pound, inasmuch as synthetic alizarin and dyes obtained from alizarin were expressly exempted from the additional duty imposed by section 501.

The Board of General Appraisers sustained the protest, and the Government appealed.

The evidence submitted by the importers on the hearing before the board as to the nature of the product establishes that "Tuscan red" is a pigment for the making of paint and is composed of—

| | |
|---|---|
| Barium sulphate | 41.72 |
| Ferric oxide | 25.09 |
| Calcium carbonate | 25.53 |
| Alizarin | 7.66 |

From that evidence the importers deduce that the importation is an alizarin compound and argue that inasmuch as synthesis is the artificial making of compounds by uniting or combining simpler compounds or their elements, compounds of which alizarin is a part must be regarded as synthetical alizarin.

The trouble with that contention is that synthetic alizarin *is not any artificial compound* of which alizarin is a constituent, but the particular artificial compound known as alizarin. Synthesis is the exact opposite of analysis, and as analysis is the separation of a compound into its constituent parts, so synthesis is the making of the compound by uniting or combining its constituent parts. Alizarin derived from the madder plant is a natural alizarin, and the reduction of that alizarin to its constituent elements or to the simpler compounds of which it is composed would be analysis.

The making of alizarin by uniting or combining such elements and compounds, whether derived from natural alizarin or from other sources, would be synthesis and the resulting product synthetic alizarin. The importation might possibly be called a synthetical *pigment*, but it certainly could not be denominated synthetical alizarin.

Importers' chemist testified that the merchandise was used as a paint pigment and was the pigment or coloring portion of paint, just as linseed oil was "the vehicle portion."

We do not see just how we could remove such an article from the category of pigments, to which it belongs, and classify it as a dye—an entirely different tariff entity—especially as there is no evidence submitted showing or tending to show that it is a dye or can be used as a dye.

Prior to the passage of the act of September 8, 1916, "Tuscan red" containing "about 10 per cent of coal-tar coloring matter, some inert diluent, and the balance iron oxide with a little moisture, usual

moisture inherent in colors," was assessed as a lake at 20 per cent ad valorem under paragraph 63 of the tariff act of 1913. That assessment was sustained against the claim by the importer that it was either a pigment or oxide of iron. (Abs. 40363.)

The same merchandise was held to be a coal-tar color lake by General Appraiser Brown, and as such subject to the additional duty imposed by section 501 of the revenue act of September 8, 1916. (Abs. 42413.)

In Abstract 42464 it was claimed by the importers that "Tuscan red" was not an aniline color or a color lake. General Appraiser Brown again held that "Tuscan red" was a color lake and that it was subject to the additional duty provided in said last-named act.

Whatever the product may be it is clear to us that it is neither natural nor synthetic alizarin. As the evidence does not show that "Tuscan red" is a dye obtained from alizarin and does show for the purposes of this case that it is a pigment for making paint, we are of the opinion that it is not within the terms of the exception of paragraph 501.

The decision of the Board of General Appraisers is *reversed.*